Sheron HARRIS, Plaintiff,

v.

**GEICO GENERAL INSURANCE COMPANY, Defendant.**

**Case No. 11–80552–CIV.**

United States District Court, S.D. Florida.

Aug. 7, 2013.

---

Andrew A. Harris, Bard Daniel Rockenbach, Burlington & Rockenbach PA, David John Glatthorn, West Palm Beach, FL, for Plaintiff.

James Kendall Clark, Clark Robb Mason Coulombe & Buschman, Miami, FL, for Defendant.

### ORDER DENYING MOTION TO DISQUALIFY AND GRANTING MOTION FOR JUDGMENT AS A MATTER OF LAW

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendant Geico General Insurance Company's motion for judgment as a matter of law, filed March 4, 2013 [DE 135]. Plaintiff Sharon Harris ("Harris") responded on March 14, 2013 [DE 139]. Geico replied on April 4, 2013 [DE 148]. Harris filed a supplemental response on May 13, 2013 [DE 155]. Geico replied to the supplement on May 23, 2013 [DE 160]. Geico also filed a memorandum of law with regard to Harris's damages on March 4, 2013 [DE 136]. Harris responded to that memorandum on March 14, 2013

[DE 140]. Geico filed its reply in relation to the memorandum on April 4, 2013 [DE 147]. This matter is also before the Court pursuant to Harris's amended motion to disqualify, filed May 13, 2013 [DE 156]. Geico responded thereto on June 19, 2013 [DE 164]. Harris replied thereto on July 8, 2013 [DE 167]. These motions are ripe for adjudication.

### I. BACKGROUND

Harris owned a Geico uninsured/underinsured motorist policy that contained protection in the amount of $100,000.00. On or about June 23, 2009, Harris was injured in an automobile accident in which an uninsured/underinsured motorist was at fault. An ambulance conveyed Harris from the accident scene to the hospital, where she presented with complaints of chest pain and headache. She was kept overnight. Geico was notified of the accident the next day.

On July 6, 2009, Harris saw Dr. Naidoo and initiated a conservative course of treatment for back and neck pain, which treatment consisted of painkillers, anti-inflammatories and physical therapy. Plaintiff also had an MRI, which revealed a bulging lower disc. Within a week, Dr. Naidoo readmitted Harris to the hospital on account of her extreme back pain.

Also on July 6, 2009, Plaintiff's counsel provided to Geico Harris's pay stubs from the past 12 weeks, showing just under $2,000.00 in pay every two weeks. Harris's counsel noted that Harris had been on "no work" status since the accident and requested reimbursement for those lost wages.

On August 13, 2009, Harris made a formal demand for policy limits, enclosing medical bills totaling $34,111.76. The demand letter stated that Harris "now lives in constant significant pain and discomfort

and can no longer perform and/or complete her activities of daily living" and that Harris "will require future treatment and care for the injuries she sustained in this vehicular crash for the remainder of her life." On August 25, 2009, Geico offered $17,156.47 to settle the matter.

On September 1, 2009, Harris served a Civil Remedies Notice ("CRN") pursuant to Fl. Stat. § 624.155. Fl. Stat. § 624.155 provides that "[a]ny person may bring a civil action against an insurer when such person is damaged ... [b]y the commission of any of the following acts by the insurer: ... Not attempting in good faith to settle claims when, under the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his or her interests." Fl. Stat. § 624.155(1)(a), (b)(1). The statute provides a 60–day safe harbor for the insurance company: "No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected." Fl. Stat. § 624.155(3)(d). The CRN form stated that Harris's medical bills exceeded $34,000.00 and that she incurred car property damage of just under $4,000.00. The CRN also stated that Harris's injuries were permanent.

Harris also saw Dr. Naidoo on September 1, 2009, and an office note indicated that Harris was a candidate for a procedure called a percutaneous discectomy. Percutaneous discectomies are brief, outpatient procedures that are performed in approximately 15 minutes. When the procedure is complete, the patient is sent home with a band-aid over the entry site. Geico responded to the CRN on September 9, 2009, again offering $17,156.47 to settle the matter.

On September 14, 2009, Harris again demanded policy limits. Harris provided an August 27, 2009 MRI, which revealed bulging discs and disc herniations. Harris had also provided, four days prior, a notice to Geico that Harris was scheduled for surgery the next week. Harris underwent a percutaneous discectomy on September 15, 2009.

On October 1, 2009, Geico raised its offer to $25,000, stating its belief that Harris had undergone a "questionable medical procedure." The record indicates that insurance claims based on percutaneous discectomies usually settle for between $4,000.00 and $6,000.00. On October 6, 2009, Harris requested additional medical expenses in the amount of $54,000, for a request of total medical expenses in the amount of $75,305. On October 8, 2009, Geico offered $30,000.00 to settle the claim.

On November 6, 2009, Harris filed suit in state court on the underlying liability action. On February, 23, 2010, during the pendency of the state court action, Harris underwent spinal fusion surgery that more than quadrupled her medical costs. On April 20, 2010, Geico tendered policy limits. Harris rejected the tender a month later. The state court action proceeded to trial in November of 2010 and concluded in a verdict of $336,351.00.

Harris brought this § 624.155 bad faith action on March 31, 2011, alleging that Geico should have settled her claim during the statute's "safe harbor" period based upon the medical information that was available to Geico at that time. Geico removed this matter to this Court on May 12, 2011.

The Court tried the bad faith action before a jury on February 11–13, 2013. The jury returned a verdict for Harris, concluding that Harris proved to a preponderance of the evidence that Geico acted in bad faith in failing to settle her claim during the 60–day safe harbor period. Geico moved for judgment as a matter of

law during trial and renewed its motion subsequent to the jury verdict. Harris has filed a motion requesting that the undersigned either voluntarily disqualify himself from this matter or that Chief Judge Federico A. Moreno review the motion to disqualify and assign a different district judge to preside over this matter.

## II. *MOTION TO DISQUALIFY*

After Harris prevailed in the case for bad faith, Geico filed a post-verdict motion asking this Court to enter judgment in its favor as a matter of law. On April 23, 2013, this Court held a hearing on those motions. Following the above referenced hearing, Harris filed the subject motion seeking to disqualify the undersigned from this case, requesting that the undersigned disqualify himself pursuant to 28 U.S.C. § 144 and 28 U.S.C. § 455(a) and (b)(1). Harris also requests that the motion to disqualify be referred to Chief Judge Moreno.

### A. 28 U.S.C. § 144

■ "The threshold requirement under § 144 disqualification procedure is that a party file an affidavit demonstrating personal bias or prejudice on the part of the district judge against that party or in favor of an adverse party." *Parrish v. Bd. of Comm'rs,* 524 F.2d 98, 100 (5th Cir.1975).[1] The statute provides in pertinent part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and reasons for the belief that bias or prejudice exists.... A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. The mere filing of a § 144 affidavit does not automatically disqualify the judge, however. *United States v. Townsend,* 478 F.2d 1072, 1073 (3d Cir. 1973). Once the affidavit is filed, the judge must determine whether the affidavit was timely, whether it was accompanied by the necessary certificate of counsel, and whether the affidavit satisfies the terms of the statute. *Parrish,* 524 F.2d at 100.

### B. 28 U.S.C. § 455

■ 28 U.S.C. section 455 provides, in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding....

Although the general effect of § 455 was to broaden the range of circumstances warranting disqualification, a judge nonetheless has an obligation "not to recuse when there is no occasion for him to do so.... '[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation.'" *Carter v. West Publishing Co.,*

---

1. Decisions of the former Fifth Circuit issued prior the close of business on September 30, 1981 constitute binding precedent in this Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

No. 99–11959–EE, 1999 WL 994997, at *2, 1999 U.S.App. LEXIS 38480, at *7 (11th Cir. Nov. 1, 1999) (quoting *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir. 1986)). A judge's impartiality must "reasonably be questioned" for the judge to recuse because "there is the need to prevent parties from ... manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *Id.* at *2, 1999 U.S.App. LEXIS 38480 at *7–8 (citing *FDIC v. Sweeney,* 136 F.3d 216, 220 (1st Cir.1998) (internal quotation marks omitted)). *See also Thomas v. Trustees for Columbia Univ.,* 30 F.Supp.2d 430, 431 (S.D.N.Y.1998) (judge must not disqualify himself unnecessarily, or else "litigants would be encouraged to advance speculative and ethereal arguments for recusal and thus arrogate to themselves a veto power over the assignment of judges.").

 In ruling on a motion to recuse under § 455, the court may scrutinize the factual accuracy of the affidavits submitted in support of the motion. The court need not accept the factual assertions as true, however. *See Phillips v. Joint Legislative Comm. on Performance and Expenditure Review of the State of Mississippi,* 637 F.2d 1014, 1019 n. 6 (5th Cir.1981). While motions to recuse under § 455 may be referred to a judicial colleague for review, they are typically decided by the presiding judge. *See Clark v. Deal,* 2:09–CV–0050–RWS, 2009 WL 4899425, at *3–4, 2009 U.S. Dist. LEXIS 115582, at *10 (N.D.Ga., Dec. 11, 2009) (internal citations omitted).

## C. Discussion

Harris requests that the undersigned disqualify himself on account of comments made during the hearing on Geico's motion for judgment as a matter of law. The relevant exchange is as follows:

Mr. Harris: There is evidence of a permanent injury and there are doctors who testified to that. They just don't believe it. They believe it's junk surgery. They believe it's a junk permanent injury.

The Court: I think it's junk surgery. I read in the paper where this surgery center has paid hundreds of thousands of dollars to all these insurance companies for fraudulent claims.

Mr. Harris: Well, Your Honor, I have to disagree with any reference to that. The point is whether a fact finder can make that determination. And for the people who go to their doctors—and Florida law is clear that you can't invade the doctor-patient relationship and question the decisions made by the patient. And so if a jury wants to believe it's junk science in trial number one, they could do that.

The Court: Sure.

Mr. Harris: And they could say, we're not awarding. The point is it's for a fact finder to determine. I respect your Honor's views of the surgery, but that's sitting as a—as I can say, most respectfully, as a seventh juror, and I say that with sincere respect, that a fact finder can make that determination.

The Court: Well, the real problem you have in this case was they filed the CRN way too early. I mean, the accident happened late in June, and on the 1st of September, while she's still being treated, they file the CRN. It looks like a clear setup, saying, you know, we're going to get this case for all it's worth. And so it was a premature CRN, and the real damages or the real injury did not appear until after the 60 day period. And what you're really putting the insurance company in a position of saying you should have known that after the 60–day period ran that she was going to have something more serious. And I think it was very negligent on the part

of the Plaintiff's attorney not to provide a letter from a doctor saying she has a permanent injury. I mean, she should know that this is a fundamental threshold, and she didn't do it.

Mr. Harris: It's not a requirement under Florida law to have that letter, and that's what I would just like to—

The Court: It may not be a requirement under Federal law, but to me—

Mr. Harris: Florida.

The Court: Or Florida law, but to me it was a malpractice not doing it. All right. I'll take this matter under advisement.

(Hr. Tr. at 58–60.)

At trial, the Court heard lengthy testimony from Defense expert Richard Adams ("Adams"), who described both the procedure performed on the Harris and the billing of same. For example, Adams testified regarding the medical community viewing the procedure with disfavor:

Mr. Adams: It is not done by a lot of other people in the community. So you can't go to a lot of other doctors and say what do you bill for this, because their answer is, I don't do that procedure, and they are not submitting it to insurance for payment, generally, so they could pretty much pick the figures that they want.

Mr. Clark: In this—Well, you mentioned they are not submitting it to insurance. Do you know why?

Mr. Adams: Well, generally, insurance companies have been and are interpreting this as not main stream—not a main stream procedure.

Mr. Clark: So, do insurance companies pay anything for the procedure.

Mr. Adams: Typically, they decline these.

\* \* \*

Mr. Clark: Do you see a lot of percutaneous discectomy procedures now?

Mr. Adams: They are kind of winding down. I have seen some done a couple years ago, not much being done currently, no.

Mr. Clark: Do you know why that is?

Mr. Adams: Well, for one thing juries weren't giving them the money, the expectations they had, on these things, generally. One of the manufacturers had a problem and stopped providing the tools. For a number of reasons, they just didn't turn out to be as successful economically as everybody hoped.

(Exhibit B: Tr. Testimony of Adams at 20, 25). In addition to testimony by Adams regarding the general disfavor of the percutaneous discectomy, there was also testimony regarding the disproportionate number of procedures performed by the group that treated Harris:

Mr. Clark: And when did the number of this procedure reach its peak in Florida?

Mr. Adams: It peaked about '86—I mean 2006, 2007, I'm sorry.

Mr. Clark: Did you do an analysis as to whether Dr. Naidoo's group was responsible for more of these procedures than anyone else in the United States?

Mr. Adams: Well, certainly, Palm Beach County and, certainly, Palm Beach Lakes Surgical Center was responsible for the most percutaneous discectomies performed anywhere. Seventy percent of all of the ones in Florida, for example, more than seventy percent were done right here.

(Exhibit B: Tr. Testimony of Adams at 21–22).

 Harris's motion to disqualify fails under both § 144 and each portion of § 455. The Court is free to consider the testimony of Adams and to reach an opin-

ion regarding both the procedure in question and the doctors performing the procedure, even if that opinion is detrimental to Harris. If anything, the Court's comments at the hearing merely reflect the substance of Adams's testimony. The Court referred to the procedure in question as "junk" came only after Harris's counsel invited the term.

Harris has not and cannot establish that this Court engaged in any behavior or has taken a position evincing prejudice or bias against any party. This Court, having sat through the entire trial, is certainly entitled to "formulate opinions on the basis of facts introduced or events occurring in the course of the [ ] proceedings ..." *United States v. S. Fla. Water Mgmt. Dist.*, 290 F.Supp.2d 1356, 1360 (S.D.Fla.2003) (quoting *Liteky v. United States*, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994)). Those opinions "do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* The Court has reviewed Harris's affidavit, which merely restates in conclusory fashion Harris's belief that the undersigned's comments at the hearing are indicative of bias. The motion to disqualify is denied.

### III. MOTION FOR JUDGMENT AS A MATTER OF LAW

**A. Harris did not demonstrate permanent injury within a reasonable degree of medical probability during the safe harbor period.**

Under Florida law, an insured may recover only economic damages, such as medical expenses or lost wages, where the injuries constitute a "serious injury" within the meaning of Fl. Stat. § 627.737(2). That provision provides that a plaintiff may recover tort damages for pain, suffering, mental anguish, and inconvenience because of injury arising out of the use of a motor vehicle only if that injury or disease consists in whole, or in part of: (a) significant and permanent loss of an important bodily function; (b) permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement; (c) significant and permanent scarring disfigurement; or (d) death.

■ These threshold requirements are incorporated in the Florida uninsured motorist statute. Specifically, Fl. Stat. § 627.727(7) provides that "the legal liability of an uninsured motorist coverage insurer does not include damages in tort for pain, suffering, mental anguish and inconvenience unless the injury or disease described in one or more paragraphs (a)-(d) of § 627.737(2)." Because first party bad faith actions brought against uninsured motorist carriers did not exist in the common law and are statutory in nature, they must be strictly construed. "Thus, an insured seeking non-economic benefits from her or his uninsured motorist carrier, must first meet the threshold requirements enumerated in section 627.737(2)(a-d)." *State Farm Mut. Auto. Ins. Co. v. Dixon*, 732 So.2d 1, 2 (Fla. 3d DCA 1999). Thus, the law recognizes that the carrier is not obligated to simply tender policy limits at the request of its insured. The question is whether, in the totality of the circumstances, the insurer acted reasonable toward its insured. *See Cruz v. American United Ins. Co.*, 580 So.2d 311, 312 (Fla. 3d DCA 1991). "Bad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause." *Powell v. Prudential Property & Cas. Ins. Co.*, 584 So.2d 12, 14 (Fla. 3d DCA 1991).

■ At trial, the attorney representing Harris in the underlying uninsured motorist claim admitted that she had not provid-

ed Geico with any medical information during the safe harbor period that Harris had sustained a permanent injury within a reasonable degree of medical probability. When asked by counsel for Geico whether she provided Geico with any evidence of permanent injury during the safe harbor period, Harris's counsel unequivocally testified in the negative:

> Mr. Clark: In fact, however, you didn't give Geico any evidence of permanent injury in this case, did you, in the period of time that the Civil Remedy Notice was in existence?
>
> Ms. Smith–Gordon: At that time, permanent injury is really dictated by medical doctors. We anticipated—
>
> Mr. Clark: You didn't give any information from a medical doctor that said she would have a permanent injury, did you?
>
> Ms. Smith–Gordon: That's correct.

(Trial Testimony of Ms. Smith–Gordon at 52.) As the exchange quoted above illustrates, Harris failed to provide any evidence of permanent injury throughout the entire safe harbor period. In her supplemental response, Harris argues that Geico "focuses on one sentence from Ms. Smith Gordon's testimony that on Day One of the 60–day Civil Remedy Notice period, there was no medical opinion stating that Plaintiff had sustained a permanent injury." [DE 155 at 3]. Harris faults Geico for ignoring Ms. Smith–Gordon's later testimony that she "anticipated—and correctly at that—that plaintiff would sustain a permanent injury arising from the subject car crash." [DE 155 at 3].

Harris overlooks that the legal standard in Florida with regard to entitlement to noneconomic damages does not turn on whether she or her counsel believes or anticipates a finding of permanent injury. Rather, the standard is whether the injury and the permanency thereof can be established within a reasonable degree of medi-

cal probability. *Avis Rent–A–Car System, Inc. v. Stuart,* 301 So.2d 29 (Fla. 2d DCA 1974) involved a car accident wherein the victim attempted to prove the presence of a permanent injury as defined by § 627.737. The victim complained of neck and back pain, saw a physician three times and had seven physical therapy treatments. The trial judge found that the victim was experiencing pain at the time of trial, but the only medical testimony presented was from the attending physician who testified that the victim had no permanent injury. *See id.* The trial court found the existence of a permanent injury based on the accident victim's complaints of pain. *See id.* The court of appeals reversed, reasoning that "if the doctors who treated appellant do not say there is any permanent injury, the jury composed of laymen certainly could not be expected to say there was such injuries; if they did it would be reversible error." *See id.* (quoting *Saucer v. City of West Palm Beach,* 155 Fla. 659, 21 So.2d 452, 455 (1945)). *City of Tampa v. Long,* 638 So.2d 35, 37–38 (Fla.1994) also concluded that proof of a permanent physical injury is a precondition to recovery under an insurance policy. *City of Tampa* also involved a personal injury action brought by a car accident victim. The plaintiff had soft-tissue pain but did not present with objective signs of injury. The plaintiff's physician testified to the permanent nature of the injuries, however, which satisfied the statutory requirement that the permanency of the injury be medically established: "By the terms of the statute, a mere recitation of the plaintiff's subjective complaints of pain is insufficient to prove a permanent injury—the plaintiff must also present expert medical testimony to establish the existence and permanency of the alleged injury." *See id. See also Fay v. Mincey,* 454 So.2d 587, 592, 596 (Fla. 2d DCA 1984)

(noting that "medical testimony is necessary in establishing a permanent injury under section 627.737(2)" and allowing a chiropractor to testify that liquid crystal thermography testing indicated the presence of a permanent lower back sprain).

The Court noted from the bench the requirement that a finding of permanency must be supported by medical expert testimony. *See* Hr. Tr. at 54 (stating "and I think the term defines itself. That means a medical person has to say that 'I think there's a permanent disability.' It isn't something you can decide by inference."). The plain text of the statute requires the presence of a permanent physical injury to a reasonable degree of medical probability.

Harris argues that the mere fact that she had the percutaneous discectomy is evidence of a permanent medical injury because that procedure entailed removal of a portion of a disc. Carried to its logical conclusion, this reasoning would mean that anyone who had an appendectomy, a tonsillectomy, or a tooth extraction would have sustained a permanent physical injury. If, indeed, removal of a portion of the spinal column via a percutaneous discectomy constituted a permanent physical injury, Harris has presented no medical testimony to that effect. That Harris had a percutaneous discectomy and had radiographic evidence of a bulging discs is insufficient, absent medical testimony, to demonstrate the presence of a permanent injury.

Harris never provided any medical evidence of a permanent physical injury during the 60–day cure period. She never indicated to Geico that she would be willing to settle for anything less than policy limit despite the fact that her economic damages were less than the policy limit. Harris's failure to provide medical evi-

dence of permanency is reasonable grounds for Geico to limit its offer to economic damages demonstrated during the cure period.

**B. The jury award in the underlying case is not the proper measure of any damages Harris incurred as a result of any bad faith on Geico's part.**

█ Also at issue is the proper measure of Harris's damages.[2] Pursuant to Fl. Stat. § 627.727(10):

> The damages recoverable from [a UM] carrier in an action brought under § 624.155 shall include *the total amount of the claimant's damages,* including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of the law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

(Emphasis added.) Although the statute states what damages are recoverable in a bad faith action, the statute does not explain how the finder of fact in such an action determines the total amount of the claimant's damages. Significantly, the statute does not say that the damages are what a jury awarded in an underlying liability action. *See Geico General Ins. Co. v. Bottini,* 93 So.3d 476 (Fla. 2d DCA 2012) (Altenbernd, J., concurring); *King v. Government Employees Ins., Co.,* 2012 WL 4052271, No. 8–10–cv–977–T030–AEP (M.D.Fla. Sept. 13, 2012).

Judge Moody in the Middle District of Florida offered a detailed examination of the question of the appropriate amount of recoverable damages in statutory bad faith

2. The Court addresses the issue of the proper measure of Harris's damages in an abun-

dance of caution in the event any appeal results in a reversal of its bad faith ruling.

actions in *King*. *King* involved a first-party statutory bad-faith action stemming from an automobile accident. Plaintiff requested $25,000, the policy limit for underinsured/uninsured motorist benefits. Geico denied the claim, and plaintiff filed a CRN. Geico denied the claim again during the 60 day cure period. Also during the cure period, the plaintiff filed suit against Geico and another motorist involved in the accident for the underlying liability action. Over a year later, Geico received records indicating that the plaintiff had undergone a much more serious surgery and that this surgery had been disclosed in the settlement offer the previous year. Geico tendered the full $25,000 policy limit, but the plaintiff refused the tender. The liability action was tried to a jury, which found that the plaintiff had sustained $1,638.171.00 in damages as a result of the accident.

Judge Moody explained that first-party uninsured motorist bad faith claims present a unique situation because judgment in the underlying liability case is limited to the underinsured motorist policy limits. *See King*, at *2, 2012 U.S. Dist. Lexis 130662 at *5 (citing *Nationwide Mut. Fire Ins. Co. v. Voigt*, 971 So.2d 239 (Fla. 2d DCA 2008) (holding that final judgment in a first-party claim is limited to policy limits)). As such, the insurance company may not appeal any judgment in excess of the policy amount. Thus, allowing Harris to rely exclusively on the underlying jury verdict as her measure of damages in this case would deprive Geico of due process as it relates to those damages.

Neither *res judicata* nor principles of collateral estoppel preclude Geico from re-litigating the damages issue because the judgment entered in the underlying case was based on Geico's contractual obligations under the policy; which are separate and distinct from the instant bad faith action. *See Blanchard v. State Farm Mut.*

*Auto. Ins. Co.*, 575 So.2d 1289, 1291 (Fla. 1991) (holding that "the claim arising from bad faith is grounded upon a legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform"); *GEICO Gen. Ins. Co. v. Harvey*, 109 So.3d 236, 240 (Fla. 4th DCA 2013) (noting that "[t]he Florida Supreme Court has repeatedly recognized that a "claim arising from bad faith is grounded upon the legal duty to act in good faith, and is thus separate and independent of the claim arising from the contractual obligation to perform" and that "a defendant's bad faith claim against his insurer is distinct, separate and independent from the plaintiff's tort claim against the defendant." "). Whereas the underlying case and the instant bad faith case are separate causes of action, *res judicata* does not bind the parties to the underlying verdict amount. Additionally, collateral estoppel does not bind the Geico to the underlying verdict amount because that verdict was not a final judgment accorded conclusive effect. *See King*, 2012 WL 4052271 at *6, 2012 U.S. Dist. Lexis 130662 at *18.

Although *King* is not binding precedent on the undersigned, the undersigned follows and adopts *King* based on the strength of its reasoning. Here, the jury award does not reflect the damages flowing from Geico's alleged breach. Rather, the jury's verdict reflects expenses incurred as a result of medical procedures undergone *after* the expiration of the 60-day safe harbor period. Geico may not be held liable for medical treatment Harris underwent well after Geico attempted to settle the case. The proper measure of damages in this case is limited to what was contemplated by the statute, that is, interest and attorney's fees from the time of the CRN was filed to the point where the policy limits were actually tendered.

Whereas Harris never provided any medical evidence of a permanent physical injury during the 60–day cure period, and whereas the jury verdict in the underlying case is not the proper measure of damages, Geico is entitled to judgment as a matter of law.

### IV. *CONCLUSION*

THE COURT, having considered the pertinent portions of the record and being otherwise fully advised, hereby

ORDERS AND ADJUDGES that the amended motion to disqualify, filed May 13, 2013 **[DE 156]**, is DENIED. It is further

ORDERED AND ADJUDGED that the motion for judgment as a matter of law, filed March 4, 2013 **[DE 135]**, is GRANTED. Final judgment shall be entered by separate order.