[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14171

_____

D.C. Docket No. 9:11-cv-80552-KLR

SHERON HARRIS,

Plaintiff-Appellant,

versus

GEICO GENERAL INSURANCE COMPANY,
a corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 4, 2015)

Before TJOFLAT, WILLIAM PRYOR, and BARKSDALE,[*] Circuit Judges.

PER CURIAM:

_____

[*] Honorable Rhesa H. Barksdale, United States Circuit Judge for the Fifth Circuit, sitting by designation.

For this diversity action controlled by Florida law, primarily at issue in this bad-faith action by Sheron Harris against her insurer, GEICO General Insurance Company, is whether, during the statutory 60-day safe-harbor period, GEICO denied in bad faith Harris' demand for the policy limit for her uninsured-motorist coverage. Judgment as a matter of law was granted GEICO. AFFIRMED.

## I.

In June 2009, an uninsured motorist (UM) injured Harris in an automobile accident in Florida involving both vehicles. GEICO insured Harris for UM accidents, with a policy limit of $100,000. By 13 August 2009 letter, Harris demanded that limit; GEICO countered on 25 August with an offer substantially below it.

Pursuant to Florida law, Harris then provided GEICO with a civil remedies notice (CRN). The 1 September CRN afforded GEICO a 60-day safe-harbor period to investigate the legitimacy and extent of Harris' claim before formally approving or denying it. Fla. Stat. § 624.155(3)(a) ("As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation.").

During that 60-day period, Harris again demanded the policy limit on 14 September, and provided GEICO an MRI revealing bulging discs and herniations and notice that she would undergo a percutaneous discectomy (a brief, outpatient procedure performed in approximately 15 minutes from which the patient is sent home with a band-aid over the entry site).  On 1 October, GEICO presented another offer below the policy limit; Harris responded by sending GEICO additional medical records and bills on 6 October, in which she informed GEICO of $54,082.15 in medical expenses for the percutaneous discectomy (PD) procedure and related expenses.  On 8 October, GEICO raised its offer to an amount still well below the policy limit, which Harris rejected.

On 6 November, following the close of the 60-day safe-harbor period, Harris filed a UM action in Florida state court, claiming GEICO owed her the policy limit.  In February 2010, while the UM action was pending, she underwent spinal-fusion surgery.  As a result, that April, GEICO offered Harris the policy limit, which she rejected.

Harris prevailed at the UM trial in November 2010, with the jury finding her permanently injured and awarding damages in the amount of $336,351, of which $185,351 constituted economic damages (medical expenses and lost wages).

3

Pursuant to Florida law, GEICO successfully moved to have the award reduced to the policy limit of $100,000.

Florida law allows insureds to sue insurers whose denial of meritorious claims is in bad faith.  Fla. Stat. § 624.155(1)(b).  Harris brought this bad-faith action against GEICO, with trial being held in February 2013.  During trial, pursuant to Federal Rule of Civil Procedure 50, GEICO moved for judgment as a matter of law (JML), but the court reserved ruling on the motion, pending the jury's verdict on liability, with the measure of damages to be determined subsequently.  The jury found GEICO acted in bad faith by failing to settle Harris' claim.  Because the court granted GEICO's post-verdict, renewed motion for JML, the measure of damages was not reached.  *Harris v. Geico Gen. Ins. Co.*, 961 F. Supp. 2d 1223, 1233-34 (S.D. Fla. 2013).

In granting JML, the court relied on Harris' UM-trial counsel's testimony that, during the safe-harbor period, Harris provided no information from a medical expert to GEICO stating Harris would suffer permanent injury.  *Id.* at 1230-32. The court disregarded the UM-trial counsel's testimony that she anticipated correctly that Harris would sustain permanent injury, with the court's stating permanency must be established within a reasonable degree of medical probability by expert medical testimony.  *Id.* at 1232.  (Whether such permanency must be

established during the 60-day period need not be decided, as Harris has failed to cite any evidence that expert medical testimony supports her claim of permanency.)  The court also concluded the damages the jury awarded in the UM trial were not, as a matter of law, the amount required to measure the damages in the bad-faith trial.  *Id.* at 1232-34.

## II.

Harris challenges the JML that, during the safe-harbor period, she failed to prove her injuries were permanent within a reasonable degree of medical probability.  In the alternative, she claims the economic damages provided GEICO during that period demonstrate GEICO's bad faith in not tendering the policy limit. (And, she claims there need not be a trial on damages, asserting that the jury award in the UM trial is the amount used to measure damages in the bad-faith trial.  We need not reach that issue.)

A JML is reviewed *de novo.  E.g., Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251 (11th Cir. 2007).  All evidence and inferences drawn from the evidence must be examined in the light most favorable to the nonmovant.  *Id.*  The court must then determine whether, in this light, there was any legally sufficient basis for a reasonable jury to find in favor of

5

the nonmovant.  *E.g., Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Cir. 2010).

In Florida, "[a]ny person may bring a civil action against an insurer when such person is damaged: . . . by the insurer['s] . . . [n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests".  Fla. Stat. § 624.155(1)(b)1.  On the other hand, no bad-faith action shall lie if, within 60 days after a claimant files a CRN, "the damages are paid or the circumstances giving rise to the violation are corrected".  *Id.* § 624.155(3)(d).  For bad-faith claims,

> [t]he insurer's appropriate response is based upon the insurer's good-faith evaluation of what is owed on the insurance contract. What is owed on the contract is in turn governed by whether all conditions precedent for payment contained within the policy have been met. An insurer, however, must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration.

*Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275-76 (Fla. 2000).

## A.

In granting JML to GEICO, the district court framed the bad-faith claim as arising from GEICO's refusal, during the 60-day safe-harbor period, to tender the policy limit to cover Harris' non-economic damages (pain and suffering). *See* 961 F. Supp. 2d at 1230. Such damages are only available under the terms of the policy if the plaintiff suffers a "permanent injury", which must be established "within a reasonable degree of medical probability". *Accord* § 627.737(2)(b). The Florida Supreme Court has not read the "within a reasonable degree of medical probability" clause to "limit the evidence to objective findings to establish the existence or permanency of a physical injury". *City of Tampa v. Long*, 638 So. 2d 35, 37 (Fla. 1994). A "subjective complaint of the patient may be the principal evidence available to prove its existence". *Id.* A "mere recitation of the plaintiff's subjective complaints of pain", however, "is insufficient to prove a permanent injury-*the plaintiff* must also present expert medical testimony to establish the existence and permanency of the alleged injury". *Id.* at 38 (emphasis added).

Admitting she did not provide a medical note with a permanency rating during the safe-harbor period, Harris relies instead on her non-medical insurance expert's testimony, during the bad-faith trial, that an insurance adjuster should

7

have been able to deduce permanency from the kind of medical treatment Harris received and her condition.  Regarding the safe-harbor period, Harris' counsel for the UM trial testified during the bad-faith trial:

> Q: In fact, however, you didn't give GEICO any evidence of permanent injury in this case, did you, in the period of time that the Civil Remedy Notice was in existence?
>
> A: At that time, permanent injury is really dictated by medical doctors. We anticipated—
>
> Q: You didn't give any information from a medical doctor that said she would have a permanent injury, did you?
>
> A: That's correct.

As noted, proving permanency "within a reasonable degree of medical probability" requires expert medical testimony.  *E.g., id.*  Harris fails to identify when a medical expert may have provided an opinion on the permanency of her injuries.  As the above testimony during the bad-faith trial demonstrates, she did not provide expert medical evidence of permanency during the safe-harbor period.

8

Likewise, she did not do so during the bad-faith trial; there, the only expert she presented was the earlier-referenced insurance claims-adjuster supervisor.

Instead, Harris claims expert medical testimony regarding permanency may be presented during the UM trial. She failed, however, to make this contention in opposition to GEICO's JML motion; therefore, her claim is waived. *See Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1249-50 (11th Cir. 2012). In any event, she fails to cite any evidence that expert medical testimony as to permanency was presented at the UM trial. Therefore, no reasonable juror could find GEICO denied Harris non-economic damages in bad faith. *See Long*, 638 So. 2d at 37; *see also Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("If an uninsured motorist is not liable to the insured for damages arising from an accident, then the insurer has not acted in bad faith in refusing to settle the claim.").

## B.

As noted, the district court limited its liability assessment to the bad faith *vel non* of the denial of only non-economic damages. In contesting JML, Harris also claimed her economic damages, presented during the 60-day safe-harbor period, demonstrated GEICO acted in bad faith by not offering the policy limit.

9

Of course, bad-faith claims are not limited to failure to settle claims based only on the amount of claimed non-economic damages.  Florida's bad-faith statute does not distinguish economic and non-economic damages in first-party bad-faith actions such as this.  The "damages in first-party bad faith actions are to include the *total amount* of a claimant's damages . . .".  *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So. 2d 55, 60 (Fla. 1995) (emphasis added); *see also* Fla. Stat. § 627.727(10).

The bad-faith statute "is correctly read to authorize a civil remedy for extra contractual damages if a first-party insurer does not pay the contractual amount due the insured after all the policy conditions have been fulfilled within sixty days after a valid" CRN has been filed.  *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000).  "It follows that there is no need to allege an award exceeding the policy limits to bring an action for insurer bad faith."  *Imhof v. Nationwide Mut. Ins. Co.*, 643 So. 2d 617, 618 (Fla. 1994).  Determining the extent of such damages begins from the date of the proven violation.  *E.g., Vest*, 753 So. 2d at 1275.  Therefore, whether Harris' economic damages presented to GEICO during the safe-harbor period exceeded the policy limit, and whether she was unwilling to settle for less than the policy limit, is of no consequence.

10

Although the court "conflate[d] the standard for establishing insurance coverage[, for non-economic damages,] under [Florida law] *at* [*the UM*] *trial* with the standard for determining whether [GEICO] *acted in good faith* in denying a claim", *Wiggins v. Allstate Prop. & Cas. Ins. Co.*, No. 13-CV-23354, 2015 WL 1401967, at *6 (S.D. Fla. 2 Mar. 2015) (emphasis added), GEICO also included in the policy, as noted, the statutory requirement for establishing permanency within a reasonable degree of medical probability, which therefore requires expert medical testimony to award non-economic damages. But this provision, as discussed *supra*, extends only to non-economic damages in both the policy and Florida law. The court correctly ruled GEICO did not deny Harris' claim in bad faith; but, the court's rationale properly extends only to GEICO's denial of Harris' claim for non-economic damages.

As she did in opposing JML, Harris asserts the $75,305 in medical expenses she provided GEICO during the safe-harbor period demonstrates her economic damages reasonably could (in all likelihood would) have exceeded the policy limit. GEICO did not tender an offer equaling or exceeding $75,305 before the safe-harbor period ended. Harris relied in part on these expenses as a basis for her bad-faith claim at trial. And, the jury found GEICO acted in bad faith "under all the circumstances" by failing to settle the claim and would have settled had it "acted fairly and honestly toward" Harris and with due regard for her interest.

11

No reasonable juror, however, could have found GEICO acted in bad faith based on the economic damages provided to it during the safe-harbor period. GEICO's final settlement offer during the safe-harbor period was $30,000, despite Harris' medical bills' then exceeding $75,000.  In the light of the evidence, discussed *infra*, that Harris' medical bills were unreasonably excessive, a reasonable juror could not find GEICO acted in bad faith in not tendering the policy limit during the safe-harbor period.

During the UM trial, Harris requested approximately $199,000 in medical expenses, but the jury awarded her $150,000.  This was reflected in the UM verdict form admitted as evidence in the bad-faith trial.  As Harris' attorney in the UM action admitted during the bad-faith trial, the difference between those requested damages and the jury's UM award corresponds with the difference between the bill she submitted to GEICO for the PD procedure during the safe-harbor period (approximately $54,000 for the total process), discussed *supra*, and the amount which GEICO's expert would have offered to settle the claim for the PD procedure in this matter (between $2,000 and $6,000).  Furthermore, as Harris' UM-trial counsel testified during the bad-faith trial, Harris' health insurer denied coverage for the PD procedure because it was outside of mainstream coverage.

12

Consequently,  based on Harris' reasonable medical expenses during the safe-harbor period and considering GEICO's final settlement offer during that period of $30,000, no reasonable juror could find that GEICO acted in bad faith in failing to tender the policy limit.  *See generally Aboy v. State Farm Mut. Auto. Ins. Co.*, 394 F. App'x 655, 657 (11th Cir. 2010) ("If a genuine issue of material fact exists about whether the evidence showed [the insured's economic] damages to exceed the policy limits, then it would be illogical to simultaneously suggest 'that a judgment in excess of the policy limits is likely' in the eyes of the insurer.")

## III.

For the foregoing reasons, the judgment is AFFIRMED.