[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10266
_____

D.C. Docket No. 1:14-cv-23193-UU

QUANTUM CAPITAL, LLC,
a Florida Limited Liability Company,

Plaintiff-Appellee,

versus

BANCO DE LOS TRABAJADORES,
a Guatemalan entity,

Defendant-Appellant,

SERGIO HERNANDEZ, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(December 19, 2017)

Before HULL, FAY, Circuit Judges, and RESTANI,[*] Judge:

PER CURIAM:

Quantum Capital, LLC ("Quantum"), a Florida company, filed suit against Banco De Los Trabajadores ("Bantrab"), a Guatemalan bank, in Florida state court. Bantrab timely removed the action to the Southern District of Florida. Quantum's suit concerns two contracts between Quantum and Bantrab: (1) a written contract entered in July 2011 concerning Bantrab's issuance of bonds, ultimately done through Deutsche Bank (the "Written Contract"); and (2) an oral contract regarding the purchase of Bantrab securities by DHK Finance, Inc. ("DHK"), a Panamanian corporation (the "Oral Contract"). Under each of these contracts, Quantum was to receive certain remuneration in exchange for facilitating aspects of the transaction involved. Of the claims below, those at issue on appeal are: Count I, alleging Bantrab breached the Written Contract, and Count IV, alleging Bantrab breached the Oral Contract.

Bantrab filed several pretrial motions in limine, including one to exclude evidence of work performed by Oswaldo Jugo, the principal of Quantum, on behalf of non-party entities. The district court denied Bantrab's motion. The case went to trial before a jury, which returned a verdict in favor of Quantum, finding Bantrab

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

2

breached both the Written and Oral Contracts.

Bantrab timely filed post-trial motions, including a renewed motion for judgment as a matter of law ("JML"), and a motion for a new trial. Relevant to this appeal, the district court denied Bantrab's JML motion, but ordered a new trial on one aspect of the complaint. Both parties then moved for summary judgment. Eventually, the district court entered final judgment in favor of Quantum.

We have jurisdiction over this matter pursuant to 28 U.S.C. § 1291. After a thorough review of the record and having the benefit of oral argument, we affirm the district court in all respects.

First, Bantrab's arguments regarding the district court's denial of its motion in limine to exclude evidence of Jugo's work on behalf of non-party entities fail. Courts have broad discretion in deciding whether to grant a motion in limine. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1161 (11th Cir. 2005). As the district court concluded, the evidence implicated by Bantrab's motion in limine "[went] to the heart of the dispute" before the jury. Any work done by Jugo that appeared to fulfill the Written Contract tends to make it more probable that Quantum provided services pursuant to that contract. At trial, Bantrab had the opportunity to convince the jury that the work in question should not be attributed to Quantum.

3

We review *de novo* the denial of Bantrab's JML motion. *See Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302, 1309 (11th Cir. 2007). A post-trial JML motion may be granted only if no reasonable juror could reach a verdict for the plaintiff. *See Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1121 (11th Cir. 2016). The contractual provision concerning Quantum's "services to be rendered" provides, in relevant part:

> In connection to this engagement, QUANTUM shall engage in the following tasks, among others:
> a. Familiarize itself to the extent it deems appropriate and feasible with the business, operations, properties, condition (financial and otherwise) and prospects of BANTRAB and the Transaction;
> b. Seek to introduce BANTRAB to other Institutions, Companies and/or Persons (the "Investors") who might be interested in a Transaction involving BANTRAB;
> c. Assist BANTRAB as to strategy and tactics in connection with its negotiations of the proposed Transaction(s) and; if requested, participate in such negotiations;
> d. Assist BANTRAB in negotiating the financial aspects of definitive agreement(s);
> e. Advise and assist BANTRAB with respect to the form and structure of the proposed Transaction(s);

Jugo testified that the Written Contract formalized a December 2008 oral agreement between Quantum and Bantrab, which, *inter alia*, made Quantum prospectively responsible for the bond transaction with Deutsche Bank. Jugo was affiliated with Quantum in December 2008, and testified to participating in conference calls related to the bond transaction, drafting an offering memorandum, contacting investment banks other than Deutsche Bank, and assisting in negotiating

4

Bantrab's legal fees for the bond transaction.

After July 2011, Jugo exchanged several emails with Deutsche Bank, concerning market conditions which were useful in soliciting securities purchasers such as DHK. Citing emails between Bantrab and a prior capital broker, Exotix, Jugo testified that Deutsche Bank initially wanted Bantrab to secure additional capitalization before moving forward with the bond transaction contemplated under the Written Contract. Jugo further cites a March 2013 email to him from a Bantrab director containing a draft engagement letter between Bantrab and Deutsche Bank, which Jugo then called the director to discuss. Together, even if Quantum's work prior to execution of the Written Contract were discounted by the jury, the above could lead a reasonable juror to conclude that Jugo's work to close the DHK transaction satisfied Quantum's obligations under the Written Contract prior to the closing of Bantrab's bond transaction with Deutsche Bank.

Regarding Bantrab's final argument on appeal, the jury found an oral contract existed between the parties in connection with the DHK securities sale, which Bantrab does not dispute. Instead, it raises the affirmative defense of illegality. Bantrab contends that if Quantum had worked on the DHK securities sale as alleged, it would have been acting in the capacity of a broker-dealer. Unregistered dealers are barred from engaging in securities sales in Florida, unless a registration exemption applies. Fla. Stat. § 517.12(1). Any contract violating

5

this statute is void. *Umbel v. Food-Trader.com, Inc.*, 820 So. 2d 372, 374 (Fla. Dist. Ct. App. 2002). Because Quantum never registered as a dealer in Florida, Bantrab argues, the Oral Contract is void. The district court rejected this argument and granted summary judgment in favor of Quantum, finding the Bantrab-DHK transaction fell within an exception to the registration requirement. Fla. Stat. § 517.061(8).

This Court reviews *de novo* the district court's interpretation of Section 517.061(8) of the Florida Securities Act. *See Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009). Section 517.061(8) exempts the following transactions from registration requirements:

> (8) The sale of securities from one corporation to another corporation provided that:
>> (a) The sale price of the securities is $50,000 or more; and
>> (b) The buyer and seller corporations each have assets of $500,000 or more.

Fla. Stat. § 517.061(8). Bantrab does not dispute that the monetary prerequisites are satisfied, but argues that "corporation" includes only domestic corporations. It therefore concludes that because the transaction involved Bantrab, a Guatemalan corporation, it did not fall within Section 517.061(8). We disagree and conclude that, within the meaning of Section 517.061(8), "corporation" is not limited to domestic corporations, essentially for the reasons stated by the district court.

**AFFIRMED**.

6